UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TONY GREEN                                                                CIVIL ACTION

VERSUS                                                                    NO. 15-915

DARREL VANNOY                                                             SECTION: "H"(1)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Tony Green, is a state prisoner incarcerated at the C. Paul Phelps Correctional Center in DeQuincy, Louisiana.  On May 24, 2011, he pleaded guilty to possession of over four hundred grams of cocaine under Louisiana law and was sentenced to a term of twenty-five years imprisonment without benefit of parole, probation, or suspension of sentence.[1]

---

[1] State Rec., Vol. 5 of 8, transcript; State Rec., Vol. 3 of 8, minute entry dated May 24, 2011.  Petitioner was prosecuted with three codefendants, all of whom also pleaded guilty at that same hearing.

On August 19, 2011, petitioner filed a motion for appeal.[2] The state district court denied that motion on September 16, 2011.[3] He then filed a motion for an extension of time to file an appeal,[4] and that motion was likewise denied by the state district court on October 21, 2011.[5]

In the interim, petitioner filed a federal application for habeas corpus relief in this Court on October 20, 2011. That application was dismissed without prejudice because petitioner had not exhausted his remedies in the state courts.[6]

On January 19, 2012, petitioner filed an application for post-conviction relief with the state district court.[7] He later supplemented that application on May 11, 2012.[8] After holding an evidentiary hearing,[9] the state court denied relief on March 22, 2013.[10] His related writ applications were similarly denied by the Louisiana Fourth Circuit Court of Appeal on September 11, 2013,[11] and by the Louisiana Supreme Court on January 9, 2015.[12]

In the interim, petitioner also filed an application for a writ of habeas corpus with the state district court on December 23, 2014.[13] That application was likewise denied on January 9, 2015.[14]

---

[2] State Rec., Vol. 4 of 8.
[3] State Rec., Vol. 4 of 8, Order dated September 16, 2011.
[4] State Rec., Vol. 4 of 8.
[5] State Rec., Vol. 4 of 8, Order dated October 21, 2011.
[6] Green v. Yelverton, Civ. Action No. 11-2771, 2012 WL 219340 (E.D. La. Jan. 3, 2012), adopted, 2012 WL 219335 (E.D. La. Jan. 25, 2012).
[7] State Rec., Vol. 4 of 8.
[8] State Rec., Vol. 5 of 8.
[9] State Rec., Vol. 7 of 8, transcript of March 19, 2013.
[10] State Rec., Vol. 7 of 8, Judgment dated March 22, 2013; see also State Rec., Vol. 7 of 8, transcript of March 19, 2013.
[11] State v. Green, No. 2013-K-0946 (La. App. 4th Cir. Sept. 11, 2013); State Rec., Vol. 8 of 8.
[12] State ex rel. Green v. State, 157 So.3d 589 (La. 2015); State Rec., Vol. 1 of 8.
[13] State Rec., Vol. 5 of 8.
[14] State Rec., Vol. 5 of 8, Order dated January 9, 2015.

On March 23, 2015, petitioner filed the instant federal application for habeas corpus relief.[15] The state has filed a response conceding that the application is timely and that petitioner has exhausted his remedies in the state courts.[16]

## Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[15] Rec. Doc. 4.
[16] Rec. Doc. 9.

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten,

4

552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>     If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

law and apply the strictly deferential standards of review mandated therein. White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

## Facts

The record reflects that petitioner was charged with multiple crimes in this case and prosecuted with three codefendants, David Haywood, Keith Martin, and Contrice Martin. Pursuant to a negotiated plea bargain, petitioner ultimately pleaded guilty to possession of over four hundred grams of cocaine. During the plea colloquy, the trial judge summarized the factual basis for the plea as follows:

> Some of the facts include, from the hearings that we have had on the case, that there was approximately 13 pounds of cocaine or a mixture of cocaine found in the apartment where the four defendants were living. Additionally, there were several weapons found in that apartment. In addition to that, there was something like $86,000 in cash found in the apartment.[17]

Petitioner expressly stipulated on the record to the factual basis as set forth by the judge.[18]

## Petitioner's Claims[19]

## Illegal Search and Seizure

Petitioner claims that his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure. The state argues that this Court is barred from reviewing this Fourth Amendment claim by Stone v. Powell, 428 U.S. 465 (1976). The state is correct.

In Stone, the United States Supreme Court held that where a state provides an opportunity for full and fair litigation of Fourth Amendment claims in the state courts, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence against him was obtained in an unconstitutional search and seizure. Id. at 494 (footnote omitted); see also Janecka v. Cockrell,

---

[17] State Rec., Vol. 5 of 8, transcript, p. 19.
[18] State Rec., Vol. 5 of 8, transcript, pp. 19-20.
[19] This opinion addresses petitioner's claims in a different order than presented in his application; however, all of his claims are addressed herein.

6

301 F.3d 316, 320 (5th Cir. 2002).  Interpreting Stone, the United States Fifth Circuit Court of Appeals has held:

> An "opportunity for full and fair litigation" means just that: an opportunity.  If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, Stone v. Powell bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.

Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978).  Therefore, the Stone bar applies even in those cases where no motion to suppress was ever filed.  Id. at 1192-93.  The Stone bar further applies even if the state court ruling on the Fourth Amendment claim was erroneous.  Swicegood v. Alabama, 577 F.2d 1322, 1324 (5th Cir. 1978).

Stone clearly applies here, in that "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims."  Bailey v. Cain, Civil Action No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007).[20]  As a result, Stone prohibits this Court from reviewing petitioner's Fourth Amendment claim.

### Involuntary Guilty Plea

Petitioner next claims that his guilty plea was involuntary.  After holding an evidentiary hearing, the state court denied this claim on the merits in the state post-conviction proceedings.  Because the claim presents a mixed question of law and fact, this federal court must defer to the state court's decision denying relief unless petitioner shows that that the decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1); Howard v. Tanner, Civ. Action No. 13-667, 2013 WL 5427887, at *10 (E.D. La. Sept. 23, 2013) (citing Pignataro v. Poole, 381 Fed.

---

[20] As the state notes in its response, petitioner's codefendants in fact raised Fourth Amendment claims which were fully litigated prior to the time that all defendants, including petitioner, jointly entered their guilty pleas in this case. State v. Martin, Civ. Action No. 2009-K-0961 (La. App. 4th Cir. Sept. 28, 2009), writ denied, 24 So.3d 862 (La. 2010). Although the Court of Appeal's decision was unpublished, a copy of the decision is included in Volume 7 of the state court record.

App'x 46, 50 (2nd Cir. 2010). For the following reasons, it is clear that petitioner has not made that showing.

On May 24, 2011, petitioner and his three defendants all pleaded guilty pursuant to a negotiated plea deal. The record from that hearing includes the following information concerning the plea agreement:

> MR. DIAZ [Prosecutor]:
> Judge, we have been in the back, the lawyers, with their clients, members of the St. Bernard Parish Sheriff's Office who handled the arrest on this particular matter. We have reached an agreement for a plea bargain and a sentence bargain with all four of the defendants before you.
> On Mrs. Martin, the State is going to amend a Bill – the Bill of Information and charge her with attempted distribution of cocaine. She has agreed to serve a sentence of ten years DOC, suspended, five years active probation. That sentence was bargained for by her lawyer and herself.
> The other three defendants are going to plead guilty as charged to the Bill of Information before you. They are to receive a sentence of 25 years at hard labor in the Department of Corrections. That sentence is to be without benefit of parole, probation, or suspension of sentence.
> There are several automobiles in this matter, money, weapons. Those are to be forfeited. They are going to waive, all defendants, including Mrs. Martin, are going to waive any interest claim they have unto the vehicle, the money, or weapons. They are not going to contest any – any civil – any civil proceedings that may be filed for forfeiture as part of this plea bargain and sentence agreement. They are going to get credit for time served, and I believe that would be – I believe that would be what we would propose to do in this case. All other charges will be dismissed.
>
> MR. EGAN [Counsel for Defendant Haywood]:
> No multiple bill.
>
> MR. DIAZ:
> No multiple bill in consideration of the plea bargain. That would be it.[21]

Clearly, a plea must be "voluntary" in order to be constitutionally valid. The reason for this rule is obvious: a criminal defendant who pleads guilty "stands as a witness against himself and he is shielded by the Fifth Amendment from being *compelled* to do so -- hence the minimum

---

[21] State Rec., Vol. 5 of 8, transcript, pp. 2-3.

8

requirement that his plea be the *voluntary* expression of *his own choice*." Brady v. United States, 397 U.S. 742, 748 (1970) (emphasis added).  However, while a defendant may not be *compelled* to plead guilty, it does not follow that he may not be *induced* to do so.  Although some types of inducements are impermissible – for example, the state may not "induce" a defendant to plead guilty "by threats (or by promises to discontinue improper harassment)," id. at 755 – others clearly are not.  As the United States Supreme Court has explained:

> Plea bargaining flows from the mutuality of advantage to defendants and prosecutors, each with his own reasons for wanting to avoid trial.  Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation.  Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process.  By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial.
> While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable – and permissible – attribute of any legitimate system which tolerates and encourages the negotiation of pleas.  It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

Bordenkircher v. Hayes, 434 U.S. 357, 363-64 (1978) (citations, quotation marks, and brackets omitted).

In the instant case, petitioner claims that his guilty plea was rendered involuntary by virtue of the fact that "[he] and his co-defendants were coerced into a package deal urged by the court.  The plea would only be accepted if all the defendant [sic] plea [sic] at the same time."[22]  Even if the Court assumes for the purposes of this decision that the state's offer was in fact conditioned on acceptance by all defendants, such a condition is not impermissible and does not render the

---
[22] Rec. Doc. 4, p. 10.

resulting pleas involuntary.  See, e.g., United States v. Carpenter, 25 Fed. App'x 337, 344 (6th Cir. 2001) ("[T]he government may properly condition any plea in a case upon all defendants pleading guilty."); United States v. Vest, 125 F.3d 676, 679 (8th Cir. 1997) ("[S]o-called 'wired' plea agreements, in which the agreement of one defendant is conditioned upon the similar agreement of another defendant, are not per se invalid."); Ennis v. United States, Nos. EP-06-CA-0016 and EP-02-CR-1430, 2007 WL 4570377, at *8 (W.D. Tex. Dec. 20, 2007).  For this reason, it simply cannot be said that the state court decision denying petitioner's claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, under the deferential standards of relief mandated by the AEDPA, this claim cannot serve as a basis for federal relief.

## Ineffective Assistance of Counsel

Lastly, petitioner claims that he received ineffective assistance of counsel.  This claim was also rejected on the merits by the state district court after an evidentiary post-conviction hearing. Because an ineffective assistance of counsel claim likewise presents a mixed question of law and fact, the AEDPA again requires that this federal court defer to the state court decision rejecting the claim unless that decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two

10

> questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added). Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the

11

benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claim.

The clearly established federal law which governs ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, The United States Supreme Court established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting

Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to satisfy the prejudice prong of an ineffective assistance of counsel claim in a case involving a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); accord James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995).

Here, petitioner's claim is somewhat unclear; however, he appears to be arguing that his counsel was ineffective in the following respects: (1) in allowing him to be coerced into the "package deal" plea bargain with his three co-defendants; (2) in failing to appeal; and (3) in failing to investigate and present the trial court with evidence of his "actual innocence."

For the reasons already explained, the Court can easily dispose of the first contention. As noted *supra*, the fact that the state allegedly offered the plea bargain only as a "package deal" did not constitute impermissible coercion. Moreover, petitioner had no constitutional right to a plea deal *at all*, and certainly not one solely on his own terms. Nguyen v. United States, 114 F.3d 699, 704 (8th Cir. 1995) ("There is no constitutional right to plea bargain. It is the prosecutor's prerogative to offer a 'package deal' or no deal at all." (quotation marks and brackets omitted)). In light of that fact, it would not have been possible for defense counsel to force the state to offer a plea bargain on such terms, and so counsel's failure to do so cannot constitute ineffective assistance. See, e.g., United States v. Cronic, 466 U.S. 648, 656 n.19 (1984) ("[T]he Sixth Amendment does not require that counsel do what is impossible ...."); Franklin v. Thompson, Civ. Action No. 07-543, 2007 WL 3046642, at *11 (E.D. La. Oct. 17, 2007) ("Counsel cannot be considered ineffective for failing to accomplish the impossible.").

With respect to petitioner's second contention faulting counsel for failing to file an appeal, it is unclear precisely what issue petitioner believes should have been appealed. As a practical matter, there is little counsel could have challenged on appeal. Under Louisiana law, "[t]he general rule is that a guilty plea waives all nonjurisdictional defects in the proceedings prior to the plea and precludes review thereof either by appeal or by post-conviction remedy." State v. McKinney, 406 So.2d 160, 161 (La. 1981). However, "[a]n exception to the rule is that a defendant, by virtue of a reservation for appellate review of specified pre-plea errors, may condition his guilty plea and thus be allowed appellate review." Id. Here, petitioner entered an *unconditional* plea, and so he could not thereafter appeal such purported errors (including but not limited to the Fourth Amendment issues) in this case. Moreover, petitioner has failed to identify any nonfrivolous issue which would have been cognizable on appeal despite his unconditional plea; therefore, necessarily, he has failed to meet his burden of proof to establish that counsel was ineffective in this respect.

If petitioner is perhaps arguing that his counsel was ineffective for failing to insist on a conditional plea which would have preserved the right to appeal pre-plea rulings, that claim fares no better. The state offered numerous concessions in exchange for petitioner's guilty plea, including a reduction of the charge, dismissal of other charges, and a limited sentence. In light of those concessions which were negotiated as a part of plea bargain with the state, petitioner could not enter a conditional plea without the state's consent. Id. at 162. Petitioner has not established that the state would have consented to a conditional plea in this case.[23] Where, as here, defense counsel could not have forced the state to agree to a conditional plea, counsel cannot be deemed ineffective for failing to accomplish something outside of his control. See United States v. Stevens, 407 Fed. App'x 859, 860 (5th Cir. 2011) ("This review does not show that the Government and

---

[23] At the evidentiary hearing concerning petitioner's claim, defense counsel in fact testified that a conditional plea was not offered by the district attorney. State Rec., Vol. 7 of 8, transcript of March 19, 2013, p. 46.

the district court would have agreed to permit Stevens to enter a conditional plea. Consequently, it cannot be said that counsel prejudiced Stevens by not attempting to procure such a plea for him.").

With respect to petitioner's final contention that his counsel was ineffective for failing to adequately investigate his case to uncover and present evidence of his "actual innocence," that claim is likewise meritless. Here, petitioner presented no evidence whatsoever at the evidentiary hearing establishing *either* that his counsel in fact failed to conduct a proper investigation *or* that any evidence of his innocence actually existed which could have been discovered through further investigation. A petitioner does not meet his burden of proof by presenting nothing more than his own unsupported, self-serving allegations that his counsel was ineffective. See Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); see also Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000). Moreover, it must be noted that petitioner expressly stipulated on the record to the factual basis for the charge and admitted *under oath* that he was in fact guilty of the crime as charged.[24] Faced with these realities, there is simply no basis for this Court to conclude that the state court's rejection of this claim was contrary to, or involved an unreasonable application of, clearly established federal law.

For all of the reasons, petitioner has failed to meet his burden of proof to establish a violation of his Sixth Amendment right to the effective assistance.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Tony Green be **DISMISSED WITH PREJUDICE**.

---

[24] State Rec., Vol. 5 of 8, transcript, pp. 19-20 and 22-23.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[25]

       New Orleans, Louisiana, this twenty-fourth day of May, 2016.

                                                    _____
                                                    **SALLY SHUSHAN**
                                                    **UNITED STATES MAGISTRATE JUDGE**

---

[25] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.